IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOMINIQUE LIVERPOOL, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-21-0510 |
| CAESARS BALTIMORE MANAGEMENT COMPANY, *et al.*, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

In this action, which was removed from Baltimore City Circuit Court, Plaintiff Dominique Liverpool brings a host of state law tort claims against Defendants CBAC Borrower, LLC; Caesars License Company, LLC; Caesars Growth Partners, LLC; Caesars Holdings, Inc.; Caesars Entertainment, Inc. (collectively, the "Moving Defendants"); and Caesars Baltimore Management Company, LLC (collectively with the Moving Defendants, the "Entity Defendants"), as well as John Doe Security Guard 1, John Doe Security Guard 2, and John Doe Supervisor (collectively, the "John Doe Defendants"). (*See* Not. Removal, ECF No. 1; Compl., ECF No. 3.) Currently pending before the Court are Liverpool's Motion to Remand (ECF No. 9) and the Moving Defendants' Motion to Dismiss (ECF No. 10). Both motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, Liverpool's Motion to Remand (ECF No. 9) will be denied, Defendant CBAC Borrower, LLC will be dismissed from this case pursuant to Federal Rule of Civil Procedure 21, and the Moving Defendants' Motion to Dismiss (ECF No. 10) will be granted.

*I. Background*[1]

On April 22, 2018, Liverpool was playing a game of craps with a friend at the Horseshoe Casino Baltimore (the "Horseshoe Casino") when he was allegedly accosted by another casino patron, who threatened to shoot Liverpool for talking to his wife. (Compl. ¶¶ 17–19.) After the other casino patron walked away—purportedly to retrieve his gun—casino personnel approached Liverpool and ordered him to leave the casino for twenty-four hours. (*Id.* ¶ 20.) Liverpool alleges that he asked to speak with a floor supervisor to explain the other patron's threatening behavior but instead several casino security guards surrounded him "in a menacing way." (*Id.* ¶¶ 21–22.)

The encounter escalated when a security guard attempted to grab Liverpool's arm and Liverpool pushed him away. (*Id.* ¶ 27.) In response, Liverpool alleges that "[m]ultiple security personnel then sprinted towards and attacked Liverpool and forced him onto the floor." (*Id.* ¶¶ 23–28.) Liverpool also alleges that during this attack two of the John Doe Defendants kneeled on his back, while other casino personnel "pile[d] on top of Liverpool, with some of the security guards pressing down Liverpool's arms while other's [sic] got onto Liverpool's legs." (*Id.* ¶¶ 30–33.) Casino personnel eventually handcuffed Liverpool and led him to a chair in a holding room, where he sat with his hands bound behind his back. (*Id.* ¶¶ 39–41.) Liverpool alleges that while he was detained, John Doe Supervisor advised him that the Horseshoe Casino had already been investigating Liverpool based on the amount of money that he had been bringing into the casino— a comment which reflected "race-based invidiously discriminatory animus" against him. (*Id.* ¶ 42.) Liverpool was released after two officers from the Baltimore Police Department conducted a check of Liverpool's license and "made the determination that there was no evidence that Liverpool had committed any crime." (*Id.* ¶ 47.) On his way out, casino "security personnel gave

---

[1] The facts in this section are taken from the Complaint and construed in the light most favorable to Plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2

Liverpool a permanent eviction letter, notifying him that he was permanently banned from Horseshoe Casino Baltimore and all other Caesars properties." (*Id.* ¶ 48.)

Liverpool brought claims against the six Entity Defendants and three John Doe Defendants for battery; false imprisonment; false arrest; negligence; gross negligence; negligent hiring and retention; false light; and conversion. (*Id.* ¶¶ 55–138.) On February 26, 2021, Defendant Caesars Baltimore Management Company, LLC ("CBMC") removed the suit to this Court. (*See* Not. Removal.)

## II.   *Motion to Remand*

Liverpool moves to remand this case back to Baltimore City Circuit Court. (ECF No. 9.)

### A. *Legal Standard*

An action brought in a state court may be removed only if the district court would have had original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Federal courts "must strictly construe removal jurisdiction" because it "raises significant federalism concerns." *Id.*

The federal diversity jurisdiction statute provides that district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). With certain exceptions, diversity jurisdiction "requires complete diversity among the parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). For purposes of diversity jurisdiction, a limited liability company ("LLC") is an unincorporated association

"whose citizenship is that of its members." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004).

### B. *Analysis*

Liverpool argues that the instant matter must be remanded for two reasons: (1) because CBMC fails to allege that the John Doe Defendants are not citizens of Maryland and (2) because there is not complete diversity between Liverpool and the Entity Defendants. (Mot. Remand.) The Court finds that both of Liverpool's stated bases for remand are unavailing and that removal jurisdiction is proper.

#### 1. *Citizenship of the John Doe Defendants*

First, Liverpool contends that this Court may not assert diversity jurisdiction over the instant matter because the Entity Defendants have not demonstrated that the John Doe Defendants are not citizens of Maryland. (*Id.* at 3–6.) As the Entity Defendants point out, Liverpool's argument is based entirely on cases that were overruled by congressional amendment of the federal removal statute in 1988. (*See* Opp'n to Mot. Remand at 9–11, ECF No. 13); *see also* WRIGHT & MILLER, 13F FEDERAL PRACTICE & PROCEDURE § 3642 (3d ed. 2020) ("In the Judicial Improvements and Access to Justice Act of 1988, Congress amended the general removal statute, Section 1441(a), in order to curtail the practice of naming fictitious defendants in a state court action to destroy diversity of citizenship, thereby preventing the defendant from exercising its right of removal."). Indeed, for more than thirty years, 28 U.S.C. § 1441(b)(1) has expressly provided that for the purposes of "determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded." *See also Flores v. Ethicon, Inc.*, 563 F. App'x 266, 267 n. 2 (4th Cir. 2014); *Berry v. SeaWorld Parks & Ent. LLC*, Civ. No. TEM-14-0152, 2015 WL 1119942, at *2 (E.D. Va. Mar. 11, 2015).

Accordingly, the citizenship of the John Doe Defendants is irrelevant to the determination of this Court's removal jurisdiction and does not justify remand of this case.

### 2. *Fraudulent Joinder of the Non-Diverse Entity Defendant*

Second, Liverpool argues that this action must be remanded because there is not complete diversity between himself and the Entity Defendants, which destroys this Court's removal jurisdiction. (*See* Mot. Remand at 8–9.) Although the other Entity Defendants are citizens of Nevada and Delaware, Defendant CBAC Borrower, LLC ("CBAC Borrower")—like Liverpool—is apparently a citizen of Maryland. (*See* Opp'n to Mot. Dismiss Ex. 10 at 29–30, ECF No. 20-1.) In CBMC's notice of removal and the Entity Defendants' opposition to Liverpool's motion to remand, the Entity Defendants contend that CBAC Borrower was fraudulently joined,[2] and accordingly, must be dismissed from this case under Federal Rule of Civil Procedure 21. (*See* Opp'n to Mot. Remand at 15–21.)

Under the doctrine of fraudulent joinder, a district court may "disregard, for jurisdictional purposes, the citizenship of certain non[-]diverse defendants, assume jurisdiction over a case, dismiss the non[-]diverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). The doctrine is an exceptional one, applying only where a removing party can show either "'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the [non-diverse] defendant in state court.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). Mere doubts

---

[2] In both the notice of removal and the opposition to Liverpool's motion to remand, the Entity Defendants also argue that every Entity Defendant except for CBMC was fraudulently joined to this case. (*See, e.g.*, Not. Removal ¶ 14; Opp'n to Mot. Remand at 7.) Because CBAC Borrower is the only Entity Defendant that would destroy this Court's diversity jurisdiction, the Court only considers the Entity Defendants' fraudulent joinder argument with respect to CBAC Borrower. *See Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (explaining that a Court may "disregard for jurisdictional purposes, the citizenship of certain non[-]diverse defendants, assume jurisdiction over a case, *dismiss the non[-]diverse defendants*, and thereby retain jurisdiction") (emphasis added).

about the strength of a claim are insufficient. *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp. 2d 943, 948 (D. Md. 2004). Rather, to establish fraudulent joinder, it must be clear that, "under the law of the state in which the action is brought, the facts asserted by the plaintiff . . . *could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous.*" *Id.* (emphasis in original) (quoting *Parks v. N.Y. Times Co.*, 308 F.2d 474, 477 (5th Cir. 1962)). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Johnson*, 781 F.3d at 704 (quoting *Hartley*, 187 F.3d at 424). The standard "heavily favors" plaintiffs, who must show only a "glimmer of hope" of succeeding. *Id.* (quoting *Mayes*, 198 F.3d at 466). In analyzing a plaintiff's claims to determine whether joinder was fraudulent, the court is "not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" *Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 720 (D. Md. 2000) (quoting *Mayes*, 198 F.3d at 464).

The Entity Defendants contend that it would be impossible for Liverpool to prevail on any of his claims against CBAC Borrower. (*See* Opp'n to Mot. Remand at 17–21.) Liverpool's claims all arise out of the incident on April 22, 2018, and each count of his Complaint is pled "against all defendants jointly and severally." (Compl. ¶¶ 63, 76, 81, 101, 115, 125, 132, 138.) Aside from an introductory "Parties" section, Liverpool's Complaint discusses the Entity Defendants collectively as the "Defendant Corporations."[3] (*See generally id.*) To support his claims for negligence and negligent hiring and retention, Liverpool asserts that "[t]he Corporate Defendants" breached duties "to train and supervise their employees" and "use due and reasonable care in

---

[3] Liverpool's collective label for the Entity Defendants elides the fact that four of the six Entity Defendants are unincorporated limited liability companies.

6

selecting, hiring, training and retaining their employees." (*Id.* ¶¶ 85, 118.) All of Liverpool's other claims hinge on the Entity Defendants' vicarious liability for the conduct of the John Doe Defendants because Liverpool argues that the John Doe Defendants "were acting within the course and scope of their employment with the Defendant Corporations." (*See id.* ¶¶ 11, 54.) However, Liverpool fails to plead that CBAC Borrower specifically employed the John Doe Defendants. Indeed, in an affidavit, Charles McCreedy, Director of Surveillance and Risk for the Horseshoe Casino, avers that security employees of the casino were employed by CBMC, not CBAC Borrower or the other Entity Defendants. (Charles McCreedy Aff. ¶ 5, ECF No. 1-1.)

In the alternative, Liverpool argues that CBAC Borrower is nonetheless properly joined as a defendant if the Court pierces the corporate veil between the Entity Defendants. (*See* Mot. Remand at 8–9.) In support of this contention, Liverpool states that Maryland courts use the "agency" test to determine when to pierce the corporate veil and urges that the U.S. Securities and Exchange Commission ("SEC") filings appended to his Complaint "establish[] how each of the Defendant Corporations exercise dominion, ownership, and control over Horseshoe Casino Baltimore." (*Id.*; *see also* Compl. ¶ 7 (citing Compl. Ex. 4 at 2, ECF No. 3).)

While Liverpool is correct that Maryland law controls this Court's veil-piercing analysis, he misapprehends the weighty standard that Maryland courts apply with respect to piercing the corporate veil for the purposes of establishing liability. *See State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 447 (D. Md. 2019) (explaining that "[t]he law of the forum state determines whether the corporate veil should be pierced"). Namely, Liverpool fails to appreciate that Maryland courts use the "agency" test that he invokes for *jurisdictional* purposes, *i.e.*, to determine whether a court may properly assert jurisdiction over a parent company for the actions of its subsidiary in the forum

state.[4] *See id.* Here, however, the question is not whether the Court may exercise jurisdiction over CBAC Borrower but whether Liverpool has a "glimmer of hope" in prevailing on his claims against CBAC Borrower. *See Riverdale Baptist Church*, 349 F. Supp. 2d at 948. Accordingly, the agency test is inapposite here, though the Court will address that test below with respect to the Moving Defendants' motion to dismiss for lack of personal jurisdiction. *See infra* Part III.B.

By contrast, where liability is concerned, Maryland courts decline to pierce the corporate veil "except where it is necessary to prevent fraud or enforce a paramount equity," even where evidence suggests that a corporate entity was established for the sole purpose of dodging legal obligations. *Iceland Telecom, Ltd. v. Info Sys. & Networks Corp.*, 268 F. Supp. 2d 585, 591 (D. Md. 2003) (quoting *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 340 A.2d 225, 233–34 (Md. 1975)). Compared to other states, "Maryland has a markedly restrictive approach to piercing the corporate veil." *Id.*; *see also Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 728 A.2d 783, 790–91 (Md. Ct. Spec. App. 1999). Indeed, "[d]espite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged the piercing of the corporate veil 'for reasons other than fraud' have failed in Maryland courts." *Residential Warranty*, 728 A.2d at 789 (citing *Travel Committee, Inc. v. Pan American World Airways, Inc.*, 603 A.2d 1301 (1992)). Here, Liverpool does not show—or even plead—that the

---

[4] Liverpool also urges in a footnote that public statements by the Entity Defendants attached to his Complaint and "the conduct of the uniformed 'John Doe' defendant's [sic] show apparent agency under Maryland law and therefore prove more than a slight probability of recovery." (Mot. Remand at 9 n. 3.) Liverpool's threadbare argument in this regard is unavailing because Liverpool does not plead that he observed any of the alleged public statements, that he had ever heard of the Entity Defendants, or that he believed that any Entity Defendant had the authority to act for any other Entity Defendant. *See B.P. Oil Corp. v. Mabe*, 370 A.2d 554, 560–61 (Md. 1977) (quoting Restatement of Agency § 267 (2d ed. 1958)) (explaining that a party "who represents another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of one appearing to be a servant or other agent as if he were such.").

8

Court must take the extraordinary step of disregarding CBAC Borrower's separate legal identity to prevent fraud or enforce a paramount equity.

Because Liverpool does not assert facts demonstrating that CBAC Borrower employed the John Doe Defendants or that CBAC Borrower can be treated as the John Doe Defendants' employer for liability purposes by piercing the corporate veil, Liverpool does not have a "glimmer of hope" in his claims against CBAC Borrower. *See Riverdale Baptist Church*, 349 F. Supp. 2d at 948. CBAC Borrower was therefore fraudulently joined as a defendant in this matter and will accordingly be dismissed from the case as a defendant pursuant to Federal Rule of Civil Procedure 21. As a result of CBAC Borrower's dismissal, there is complete diversity in this case, and the Court's removal jurisdiction is proper. Liverpool's motion to remand will be denied.

### III.  *Motion to Dismiss*

The Moving Defendants also seek to dismiss Liverpool's claims against them pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), asserting that this Court lacks personal jurisdiction and that Liverpool fails to state claims upon which relief can be granted. The Court analyzes the motion to dismiss with respect to the Moving Defendants remaining in the action (the "Remaining Moving Defendants") in light of the Court's dismissal of CBAC Borrower from this action. *See supra* Part II.B.2. For the reasons set forth below, the Court finds that it lacks personal jurisdiction over the Remaining Moving Defendants, and accordingly does not reach the question of whether Liverpool's claims against the Remaining Moving Defendants fail to state a claim under Rule 12(b)(6).[5]

---

[5] The Court notes, however, that Liverpool's claims against the Remaining Moving Defendants suffer from the same deficiencies as those asserted against Defendant CBAC Borrower, *see supra* Part II.B.2, and accordingly, such claims would also likely be dismissed under Rule 12(b)(6). *See Hartley*, 187 F.3d at 424 (explaining that the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)").

### A. *Legal Standard*

A motion to dismiss under Rule 12(b)(2) is a test of the Court's personal jurisdiction over the defendant. *Lewis v. Willough at Naples*, 311 F. Supp. 3d 731, 734 (D. Md. 2018). Where, as here, a court determines personal jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). The court must construe the relevant allegations in the light most favorable to the plaintiff and draw "the most favorable inferences for the existence of jurisdiction." *U.S. Sec. & Exch. Comm'n v. Receiver for Rex Ventures Grp.*, 730 F. App'x 133, 137 (4th Cir. 2018) (quoting *Combs*, 886 F.2d at 676). In drawing its inferences, the court may look outside the plaintiff's proof, to the defendant's motions, legal memoranda and declarations. *Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, Civ. No. ELH-13-3702, 2015 WL 751344, at *3 (D. Md. Feb. 20, 2015).

### B. *Analysis*

The Remaining Moving Defendants argue that the claims against them must be dismissed because this Court lacks personal jurisdiction. (Mot. Dismiss.) Two types of personal jurisdiction exist: general jurisdiction, based upon continuous and systematic activities by a defendant in the state, and specific jurisdiction, premised upon a defendant's contacts with the forum state when the suit arises out of those specific contacts. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014). If a plaintiff has made a showing of either type, then personal jurisdiction is established.

General jurisdiction exists where a party's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 127 (alterations in

10

original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). When assessing whether a corporation or limited liability company is essentially at home in the forum State, courts look to the entities' place of incorporation and principal place of business. *See, e.g., id.* at 139; *see also Mountain Funding, LLC v. Blackwater Crossing, LLC*, Civ. No. GCM-05-0513, 2006 WL 1582403, at *3 (W.D.N.C. June 5, 2006) (explaining that "the practice of disregarding a limited liability company as an entity and looking to the citizenship of its members is only used to determine whether a court has diversity for subject matter jurisdiction"). Here, none of the Remaining Moving Defendants' places of incorporation or principal places of business are in Maryland (*see* Mot. Dismiss at 10–11 n. 6), and accordingly, this Court lacks general jurisdiction over the Remaining Moving Defendants.

To establish specific jurisdiction, a plaintiff must show that a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "A federal court sitting in diversity has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Although Maryland's long-arm statute "is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution," courts must first "identify a prong of the [long-arm] statute that appears to confer jurisdiction" before proceeding to the constitutional analysis. *Berg Corp. v. C. Norris Mfg., LLC*, Civ. No. JKB-19-0043, 2019 WL 1440155, at *2 (D. Md. Apr. 1, 2019) (internal quotation marks and citations omitted).

The Maryland long-arm statute allows courts to assert jurisdiction over an entity, which, on its own or through an agent, *inter alia*, "(1) [t]ransacts any business or performs any character

11

of work or service in the State; (2) [c]ontracts to supply goods, food, services, or manufactured products in the State; (3) [c]auses tortious injury in the State by an act or omission in the State . . ." MD. CODE ANN., CTS. & JUD. PROC. § 6-103(b).

As explained above, *see supra* Part II.B.2, Liverpool alleges in his Complaint that the Entity Defendants caused tortious injury to Liverpool through the negligent hiring and retention of the John Doe Defendants and that they were vicariously liable as the employers of the John Doe Defendants. CBMC effectively rebuts this, however, through an affidavit establishing that only CBMC employed the John Doe Defendants at the relevant time. (*See* McCreedy Aff. ¶ 5.) Accordingly, the Court considers in the alternative whether CBMC is an agent of the Remaining Moving Defendants such that the Court should pierce the corporate veil between the Entity Defendants for jurisdictional purposes.

As noted above, *see supra* Part II.B.2, Maryland courts use the "agency" test to determine whether "[t]o assert jurisdiction over a parent company based on the conduct of the subsidiary." *Newman*, 125 F. Supp. 2d at 722. "The court may only attribute the subsidiary's actions to the parent 'if the parent exerts considerable control over the activities of the subsidiary.'" *Id.* at 723 (quoting *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993)). The central consideration in making this determination is "'whether significant decisions of the subsidiary must be approved by the parent,' but the court also examines factors such as whether the parent and subsidiary keep separate books and records, use separate accounting procedures, and hold separate directors' meetings." *Id.* (quoting *Mylan*, 2 F.3d at 61).

Here, Liverpool fails to establish that CBMC acted as an agent of the Remaining Moving Defendants such that the Remaining Moving Defendants are within the reach of Maryland's long-arm statute. Although Liverpool alleges that SEC filings and press releases by Caesars

Entertainment, Inc. demonstrate that "each of the Defendant Corporations exercise dominion, ownership, and control over Horseshoe Casino Baltimore" (Mot. Remand at 9), Liverpool fails to provide facts in support of this conclusory assertion, and as a result, it is "not entitled to the presumption of truth." *See Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 799–800 (D. Md. 2011) (finding that the court lacked personal jurisdiction where the plaintiffs' broad assertions regarding a corporate defendant's control over another corporate defendant's business activities and decisions was unsupported by factual evidence). Accordingly, the Court finds that it lacks personal jurisdiction over the Remaining Moving Defendants, and their motion to dismiss will be granted pursuant to Federal Rule of Civil Procedure 12(b)(2).

## IV. Conclusion

For the foregoing reasons, an Order shall enter denying Liverpool's motion to remand (ECF No. 9), dismissing CBAC Borrower from this case pursuant to Federal Rule of Civil Procedure 21, and granting the Moving Defendants' motion to dismiss (ECF No. 10).

DATED this __21__ day of July, 2021.

BY THE COURT:

_____
James K. Bredar
Chief Judge