IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DOMINIQUE LIVERPOOL, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-21-0510 |
| CAESARS BALTIMORE MANAGEMENT COMPANY, *et al.*, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Dominique Liverpool brought an action in the Circuit Court for Baltimore City against Caesars Baltimore Management Company, LLC ("CBMC"), several other corporate defendants that have since been dismissed (together with CBMC, "Entity Defendants"), and three John Doe individuals alleging various tort law claims. (*See* Compl., ECF No. 3; *see also* Mem. Op., ECF No. 25). On July 22, 2021, this Court dismissed the claims against all Entity Defendants except for CBMC and denied Plaintiff's Motion to Remand (ECF No. 9), disregarding the citizenship of the John Doe defendants and finding that the Court has diversity jurisdiction over the case. (*See* Mem. Op.) Since that time, Plaintiff has discovered that the John Doe defendants named in the state court Complaint are all Maryland residents. (*See* ECF No. 28 at 2.) In light of this development, on August 1, 2021, Plaintiff filed a Motion to Amend/Correct the Court's July 22, 2021 Order pursuant to Federal Rule of Civil Procedure 60(b)(6) (hereinafter "Rule 60(b) Motion") along with a purported Amended Complaint. (*See id.*; ECF No. 29.) The Court ordered Plaintiff to seek judicial approval to amend his state court Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), which Plaintiff did on August 6, 2021. (*See* ECF Nos. 30, 31.) These

1

Motions are now ripe for review and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, the Court grants Plaintiff's Motion to Amend (ECF No. 31), denies Plaintiff's Rule 60(b) Motion (ECF No. 28), and remands this case to the Circuit Court for Baltimore City.

## I.   *Background*[1]

On April 22, 2018, Plaintiff was playing a game of craps with a friend at the Horseshoe Casino Baltimore when a man allegedly asked Plaintiff why he was talking to the man's wife. (Compl. ¶¶ 17–18.) After the man allegedly threatened to retrieve his gun and shoot Plaintiff, casino employees approached Plaintiff and directed him to leave the casino for 24 hours. (*Id.* ¶¶ 19–20.) Several security personnel approached Plaintiff in response to his request to speak with a supervisor, and he tried to explain the danger he faced because of the man's alleged threat. (*Id.* ¶¶ 22–25.)

The encounter escalated when a security guard attempted to grab Plaintiff's arm and Plaintiff pushed him away. (*Id.* ¶ 27.) In response, Plaintiff alleges that "[m]ultiple security personnel then sprinted towards and attacked" him, forcing him to the floor. (*Id.* ¶ 28.) The guards allegedly forced Plaintiff into a "prone position" while one of the guards—John Doe Security Guard 1—knelt on Plaintiff's back, and another—John Doe Security Guard 2—crushed Plaintiff's head with his knee. (*Id.* ¶¶ 30–32.) The guards eventually handcuffed Plaintiff and detained him in a holding room. (*Id.* ¶¶ 39–41.) While detained, John Doe Supervisor allegedly directed comments toward Plaintiff that evinced the casino's "race-based invidiously discriminatory animus." (*Id.* ¶ 42.) Plaintiff was eventually released after it was determined that "there was no evidence that [Plaintiff] had committed any crime." (*Id.* ¶ 47.) Casino personnel ultimately gave

---

[1] In this section, the Court summarizes the alleged facts that are relevant to the instant motions. The Court provides greater detail describing the alleged physical altercation in its prior Memorandum. (ECF No. 25.)

2

Plaintiff a "permanent eviction letter" banning him from Horseshoe Casino Baltimore and all other Caesars properties. (*Id.* ¶ 48.)

On September 10, 2020, Plaintiff brought claims in state court against the Entity Defendants and three John Doe Defendants for battery; false imprisonment; false arrest; negligence; gross negligence; negligent hiring and retention; false light; and conversion. (*Id.* ¶¶ 55–138.) Plaintiff—a Maryland citizen, (*see* ECF No. 1-4 at 1)—seeks $2,500,000 in compensatory damages and $5,000,000 in punitive damages. (Compl. ¶¶ 139–40.) On February 26, 2021, Defendant CBMC removed the suit to this Court. (*See* Not. Removal, ECF No. 1.) On July 22, the Court denied Plaintiff's Motion to Remand (ECF No. 9) and granted the Motion to Dismiss filed by several Entity Defendants (ECF No. 10)—keeping the action in federal court and leaving CBMC and the three John Does as the remaining Defendants. (*See* Mem. Op.; ECF No. 26.)

## II.  *Legal Standard*

The federal diversity jurisdiction statute provides that district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). With certain exceptions,[2] diversity jurisdiction requires "complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). Although the Court disregards the citizenship of fictitious parties when determining whether complete diversity exists, *see* 28 U.S.C. § 1441(b)(1), non-diverse defendants who are allowed to replace fictitious

---

[2] § 1332 requires only minimal diversity in class actions filed pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005).

3

defendants after removal will destroy federal diversity jurisdiction and require remand to state court. *See Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 475–77 (5th Cir. 2001); *Casas Off. Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 674 (1st Cir. 1994) ("[F]ederal diversity jurisdiction is defeated so long as, after removal, fictitious defendants are replaced with nondiverse, named defendants, regardless of whether they happen to be dispensable or indispensable to the action."); *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540–41 (6th Cir. 2006).

Although Federal Civil Rule 15(a)(2) instructs courts to grant a party leave to amend a pleading "freely" and "when justice so requires," courts must proceed with greater caution when the amended pleading would destroy complete diversity. Fed. R. Civ. P. 15(a)(2). When a plaintiff seeks to join a non-diverse defendant following removal, the Court may either "deny joinder, or permit joinder and remand the action" to state court.[3] 28 U.S.C. § 1447(e). This decision is "committed to the sound discretion of the district court," and remand is automatic once joinder is granted. *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999); *see also Dobbs v. JBC of Norfolk, Va., Inc.*, 544 F. Supp. 2d 496, 498 (E.D. Va. 2008). In exercising this discretion, the Court should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Mayes*, 198 F.3d at 462 (internal citations and quotations omitted). "[T]he diverse defendant has an interest in keeping the action in federal court," *Coley v. Dragon Ltd.*, 138 F.R.D. 460, 465 (E.D. Va. 1990), and courts must detect efforts to avoid federal jurisdiction "[e]specially where . . . a

---

[3] Plaintiff now seeks to name three previously unknown individuals who are allegedly Maryland citizens (in addition to naming two entirely new Maryland citizen defendants). Because the presence of these Prospective Defendants in this litigation would destroy complete diversity, the Court considers their citizenship in its jurisdictional inquiry under 28 U.S.C. § 1447(e).

4

plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place . . . ." *Mayes*, 198 F.3d at 463; *see also Gum v. Gen. Elec. Co.*, 5 F. Supp. 2d 412, 414 (S.D.W. Va. 1998). That said, these considerations are balanced against the possibility that retaining jurisdiction might cause "parallel lawsuits in federal and state court, which may spawn inconsistent results and inefficient use of judicial resources." *Mayes*, 198 F.3d at 463.

## III. Analysis

Pending before the Court are Plaintiff's Motion for Relief from Judgment[4] (ECF No. 28) and Motion to Amend his Complaint (ECF No. 31). On August 1, 2021, Plaintiff filed a Motion pursuant to Rule 60(b) (ECF No. 28) seeking relief from the Court's July 22 Order denying remand (ECF No. 26) and improperly filed an Amended Complaint naming the three John Doe Defendants and adding two new ones: Rodriguez Deon Coleman (John Doe Security Guard 1); Christian Jamal Golder (John Doe Security Guard 2); Daniel Jay Walker (John Doe Supervisor); Maurice Graham; and Stephen Franklin (collectively, "Prospective Defendants"). (*See* Proposed Am. Compl., ECF No. 31-2.) The parties do not dispute that all five Prospective Defendants are Maryland citizens. (*Id.* ¶¶ 3–7.) At the Court's direction (*see* ECF No. 30), Plaintiff filed a Motion to Amend his Complaint to name the Prospective Defendants, arguing that the Court should freely give leave to

---

[4] Rule 60(b) allows the Court to grant a party relief from a final judgment, order, or proceeding for one of five enumerated reasons, or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6); *see also Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011); *Vitol, S.A. v. Capri Marine, Ltd.*, Civ. No. MJG-09-3430, 2013 WL 2149754, at *2 (D. Md. May 14, 2013). Importantly, relief may only be granted pursuant to Rule 60(b) when the judgment, order, or proceeding is final. *See* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2852 (3d ed. April 2021) ("Rule 60(b), however, as amended in 1948, applies only to 'a final judgment, order, or proceeding.'"); *cf. Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (4th Cir. 1983) (citing *Catlin v. United States*, 324 U.S. 229, 233 (1945)) ("A final decision [under 28 U.S.C. § 1291] is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"). Plaintiff's Rule 60(b) Motion (ECF No. 28) purports to seek relief from this Court's Order (ECF No. 26) denying his Motion to Remand (ECF No. 9). Although Plaintiff's Rule 60(b) Motion appears to be an improper vehicle through which to advocate for the relief requested therein, because the Court grants Plaintiff's Motion to Amend his Complaint to name non-diverse defendants—depriving the Court of subject matter jurisdiction and compelling remand to state court—the Court does not reach this question and instead denies Plaintiff's Rule 60(b) Motion (ECF No. 28).

amend under Federal Civil Rule 15 "absent bad faith, undue prejudice to the opposing party, or futility of amendment."[5] (ECF No. 31 at 2 (citing *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000).)

In opposition, Defendant CBMC first argues that Federal Civil Rule 7(b)(1)(B)—which requires a moving party to "state with particularity the grounds for seeking the order"—warrants denying Plaintiff's Motion to Amend, which fails to identify the controlling legal framework.[6] Fed. R. Civ. P. 7(b)(1)(B); *see also* 28 U.S.C. § 1447(e); *Mayes*, 198 F.3d at 462. In the alternative, CBMC argues that the *Mayes* factors counsel against allowing Plaintiff to amend his Complaint because "the predominant purpose behind Plaintiff's request is to destroy diversity jurisdiction"; Plaintiff was slow to uncover the identities of the Prospective Defendants named in his Proposed Amended Complaint; Plaintiff's claims against the Prospective Defendants are supposedly futile; and CBMC will be prejudiced if joinder and remand are permitted.[7] (ECF No. 33 at 5, 7–10, 11–12, 14.)

---

[5] As explained, post-removal motions to join parties whose presence in the action would destroy the Court's diversity jurisdiction are governed by 28 U.S.C. § 1447(e), even when Rule 15 would conflict. *See* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3739.1 (Rev. 4th ed. Apr. 2021) ("[Section 1447(e)] leaves the joinder issue to the discretion of the district court. Discretion exists even when the amendment of the complaint ordinarily would be 'as a matter of course' under Federal Civil Rule 15(a)(1).").

[6] The Court is unpersuaded by this argument. Although Plaintiff does not identify the correct legal standard governing his Motion to Amend, he avers that he discovered the identities of the three previously unknown fictitious Defendants and of two additional Prospective Defendant security guards, who allegedly "participated in the . . . assault, kidnapping and false imprisonment of [Plaintiff]." (ECF No. 31 at 3.) In this case, this level of detail is sufficient to satisfy the requirements of Rule 7(b)(1)(B). *See Crago v. Cap. Advantage Fin. & Dev., Inc.*, 242 F.R.D. 341, 344–45 (D.S.C. 2007) (finding that plaintiff's Motion to Amend Complaint and Add Party complied with Rule 7(b)(1) where plaintiff alleged a factual connection between the prospective defendant and the tortious conduct alleged in the case); *see also Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 793 (8th Cir. 2003) ("The particularity requirement should not be applied in an overly technical fashion when the purpose behind the rule is not jeopardized."). *But cf. United States v. Maclaren*, 866 F.3d 212, 218–19 (4th Cir. 2017) (acknowledging *United States v. Barrett*, No. 5:07-HC-2097, at 6 (E.D.N.C. Oct. 30, 2012), which denied pursuant to Federal Civil Rule 7(b)(1)(B) a motion for a hearing under 18 U.S.C. § 4247(h) because the movant failed to cite the correct legal standard or identify facts demonstrating that the requested relief was warranted).

[7] Plaintiff filed a Reply to Defendant CBMC's Opposition to Plaintiff's Rule 60(b) Motion, (*see* ECF Nos. 32, 34), but did not respond to Defendant CBMC's Opposition to Plaintiff's Motion to Amend. (*See* ECF No. 33.)

The Court first turns to considerations favoring joinder and remand, then considers countervailing factors, and finally balances the equities. *See Mayes*, 198 F.3d at 462.

## A. *Considerations Favoring Joinder and Remand*

First, it does not appear that Plaintiff seeks to join the Prospective Defendants for the sole purpose of destroying this Court's subject matter jurisdiction—a finding that would counsel against joinder and remand.[8] *See Mayes*, 198 F.3d at 462. When "a plaintiff has no hope of recovery against the defendant that is sought to be joined, it is more likely that the plaintiff in question only seeks to name the non-diverse defendant to attain remand." *McCallister v. Citi Mortg., Inc.*, Civ. No. JKB-21-1639, 2021 WL 5360438, at *4 (D. Md. Nov. 17, 2021). Whether a prospective defendant would be fraudulently joined[9] is relevant to help the Court evaluate whether a plaintiff only seeks to join the defendant to deprive the Court of subject matter jurisdiction. *Mayes*, 198 F.3d at 463; *see also AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003–04 (4th Cir. 1990). Although "the absence of fraudulent joinder does not require acceptance of an amendment to the complaint that would result in remand," *Mansaray v. Mut. Benefit Ins. Co.*, Civ. No. PX-17-0098, 2017 WL 2778824, at *4 (D. Md. June 26, 2017) (internal citations and quotations omitted), if a "plaintiff has a substantive claim against the party to be joined," it is less likely that "the purpose of the amendment is to

---

[8] The Court is unpersuaded by Defendant CBMC's argument that Plaintiff's impermissible purpose is revealed by the fact that the sole basis for his Rule 60(b) Motion is his intent to name non-diverse defendants. (*See* ECF No. 33 at 6.) This argument misses the point of this part of the *Mayes* inquiry: is the destruction of subject matter jurisdiction the entire aim of the sought joinder, or is it simply a collateral consequence of naming parties who ought to be present in the litigation for any of a number of equitable reasons? As discussed *infra*, the Court concludes that it is the latter in this case.

[9] Fraudulent joinder "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes*, 198 F.3d at 461. The defendant bears the heavy burden of demonstrating that the plaintiff does not have a "glimmer of hope" of success with a claim against the non-diverse defendant; there need only be "a slight possibility of a right to relief" to defeat a fraudulent joinder claim. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999); *see also Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015); *Balt. Cnty. v. Cigna Healthcare*, 238 F. App'x 914, 920 (4th Cir. 2007).

7

defeat federal jurisdiction." *Woods v. AlliedBarton Sec. Servs. LLC*, Civ. No. CCB-11-2831, 2012 WL 439694, at *3 (D. Md. Feb. 9, 2012); *see also McCallister*, 2021 WL 5360438, at *5. This is especially so when the allegations against a proposed defendant arise from the same circumstances giving rise to the allegations against defendants who are already named. *See Dobbs*, 544 F. Supp. 2d at 499.

In *Dobbs*, Plaintiff Dobbs sued a nightclub owner after he was injured during a barroom brawl, bringing a number of tort law claims similar to those at issue in this case. *Dobbs*, 544 F. Supp. 2d at 497. After the club owner removed the action to federal court, Dobbs sought, and the court granted him, leave to amend his complaint to add five John Doe defendants. *Id.* He later sought leave to again amend his complaint to name three of the John Doe defendants—all of whom allegedly either directly injured him or negligently hired, trained, and supervised the nightclub employees who contributed to Dobbs' injuries. *Id.* at 498. The court permitted Dobbs to name the non-diverse defendants and remanded the matter to state court for four reasons: (1) it was reasonable for Dobbs to have been unaware of the identities of the individuals who contributed to his injuries in the chaos of the skirmish; (2) the allegations against the three prospective defendants arose from the same events giving rise to Dobbs' claims against the nightclub owner; (3) the likelihood that significant injury to Dobbs would occur if joinder were denied; and (4) the danger of parallel lawsuits in federal and state court. *Id.* at 499–501.

This case is factually similar to *Dobbs* in several respects. First, like Dobbs, Plaintiff seeks to name non-diverse individual defendants—who allegedly directly contributed to Plaintiff's injury—after already suing their employer. Although the Prospective Defendants may very well be able to assert affirmative defenses,[10] all of the Prospective Defendants are alleged to have

---

[10] For example, Maryland's general statute of limitations for civil actions may apply. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2021). However, the Court is unpersuaded by CBMC's invocation of Maryland's Special

8

specifically acted to harm Plaintiff in some way. *Cf. Gum*, 5 F. Supp. 2d at 415 n.9 (denying joinder where one defendant had a likely statute of limitations defense *and* another defendant faced only an "attenuated allegation of liability"). Here are just some of the allegations Plaintiff makes in his Proposed Amended Complaint: Coleman "pressed down with his weight, kneeling on [Plaintiff's] back, thereby compressing [Plaintiff's] lungs and inhibiting his" breathing (ECF No. 31-2 ¶ 30); Golder used his knee to crush Plaintiff's head (*id.* ¶ 31); Graham and Franklin "joined in" on the pile, ignoring Plaintiff's pleas that he could not breathe (*id.* ¶¶ 32, 34); and Walker supervised Coleman, Golder, Graham, and Franklin and left Plaintiff confined and handcuffed. (*Id.* ¶¶ 42, 77.) Because Plaintiff alleges facts to support facially legitimate claims against the Prospective Defendants,[11] the Court finds that Plaintiff does not seek to join the Prospective Defendants simply to destroy diversity jurisdiction—irrespective of any potential affirmative defenses that might be raised by the Prospective Defendants at the motion to dismiss stage.

Next, it is possible that failure to join the Prospective Defendants may result in inconsistent federal and state court judgments and the inefficient expenditure of judicial resources. *See Mayes*, 193 F.3d at 463 (citing *Coley*, 138 F.R.D. at 465); *see also McCallister*, 2021 WL 5360438, at *3. That a "case cannot be litigated properly without" the presence of the non-diverse defendant will support joinder and remand. *Sodibar*, 2014 WL 1276441, at *7. As in tort cases alleging lead paint exposure, *see, e.g., McCallister*, 2021 WL 5360438, at * 3 (discussing lead paint cases), the problems that might arise from parallel litigation in this case are significant. If joinder is denied, it is possible that Plaintiff might attempt to bring a subsequent lawsuit against the Prospective

---

Police statute, which authorizes Special Police Officers to arrest trespassers. *See* Md. Code Ann., Pub. Safety § 3-301 *et seq.* (West 2021). At best, it is questionable whether this arrest power would authorize Plaintiff's allegations of excessive force, if shown to be true.

[11] Defendant argues that Plaintiff's Amended Complaint would not survive a motion to dismiss because of the conclusory nature of many of the allegations therein. (*See* ECF No. 33 at 13.) The Court does not make any findings with respect to the likelihood that Plaintiff's Proposed Amended Complaint would survive a motion to dismiss.

Defendants in state court. While such a lawsuit could be time-barred, if allowed to proceed, a parallel state court proceeding would be inefficient and might result in a judgment at odds with this Court's judgment with respect to Defendant CBMC. *See Dobbs*, 544 F. Supp. 2d at 501 ("[I]t is very likely that both a state court and this court would have to resolve issues surrounding what, if any, liability for these defendants' actions is imposed on [federal court employer-defendant] under the doctrine of *respondeat superior*."). This possibility weighs in favor of joinder and remand.

Finally, the Court finds that Plaintiff would be significantly injured if joinder and remand are not permitted. Defendant CBMC argues that Plaintiff will not be injured if joinder is denied because CBMC would be able to "satisfy a judgment against it." (ECF No. 33 at 11.) However, a plaintiff "may add a party even if full relief between the existing parties is available without the new party," because "it makes legal and practical sense that the individual alleged to be specifically responsible for the incident giving rise to the plaintiff's action should be a defendant." *Smith v. Truland Sys. Corp.*, Civ. No. DKC-09-1422, 2009 WL 3833980, at * 2 (D. Md. Nov. 13, 2009) (citing *Anderson v. CSX Sealand, Inc.*, Civ. No. 96-1642, 1997 WL 16617, at *2 (E.D. LA. Jan. 14, 1997)). If forced to pursue his claims against the Prospective Defendants in a separate state court proceeding, Plaintiff would face the financial difficulty of funding two separate lawsuits resulting from the same occurrence. If such a parallel proceeding is time-barred, Plaintiff would be unable to seek justice against individuals who allegedly harmed him. *See Dobbs*, 544 F. Supp. 2d at 500 (recognizing that if proposed non-diverse defendants did contribute to plaintiff's injuries, plaintiff "is entitled to seek redress from them"). Plaintiff thus faces significant injury in either scenario.

Given that Plaintiff alleges facts supporting facially valid legal claims against the Prospective Defendants, the possible consequences of parallel lawsuits, and Plaintiff's likely injury, "[t]he equities strongly favor allowing Plaintiff to try this case once, with all parties involved present in a single action." *Dean v. Walmart, Inc.*, Civ. No. 3:20-766-HEH, 2021 WL 3008596, at *2 (E.D. Va. July 15, 2021).

### *B. Countervailing Factor: Plaintiff's Delay*

Defendant CBMC argues that the Court should deny Plaintiff leave to amend his Complaint due to Plaintiff's delay in seeking to name the Prospective Defendants. (ECF No. 33 at 7–10.) When a plaintiff is slow to name a defendant whose presence in the litigation happens to destroy complete diversity, the delay may suggest that the plaintiff simply seeks to defeat federal subject matter jurisdiction absent another plausible explanation. *See Brundage v. MV Transp., Inc.*, Civ. No. SAG-16-3634, 2017 WL 1207584, at *3 (D. Md. Apr. 3, 2017); *C.A. ex rel. Achumba v. Am. Honda Motor Co.*, Civ. No. RWT-09-2159, 2009 WL 4730506, at *3 (D. Md. Dec. 1, 2009). When a plaintiff's inability to identify all who have harmed him or her stems from the chaotic nature of the circumstances underlying plaintiff's cause of action, a plaintiff's delay in naming a prospective defendant will lend diminished support for denying a plaintiff's motion to amend pursuant to 28 U.S.C. § 1447(e). *See Dobbs*, 544 F. Supp. 2d at 499.

Plaintiff waited more than three years after the alleged incident occurred before seeking to name the Prospective Defendants, claiming that "the suspension of discovery pending resolution of the motions to dismiss," Plaintiff's inability "to directly contact any of the individual John Doe Defendants, and a prior [s]tate court order preventing access to the Horseshoe [Casino] premises pre-suit" all delayed his discovery of the identities of the Prospective Defendants. (ECF No. 28 at 2–3.) Defendant CBMC argues that this information was "publicly available," and Plaintiff "could

11

have obtained [it] at any time" since the April 2018 incident. (ECF No. 33 at 7.) Plaintiff asserts that he uncovered the Prospective Defendants' identities using "photographs and other information provided by the Maryland Department of State Police," social media, information obtained by Plaintiff personally, and a Maryland Public Information Act (MPIA) request. (*See* ECF No. 28 at 2.) Notably, Plaintiff did not have the benefit of discovery to aid his investigation. *See Dobbs*, 544 F. Supp. 2d at 499 (finding it "reasonable to assume that the only way that [Plaintiff] could learn the identities of [non-diverse nightclub employee] defendants would be through discovery"). However, Plaintiff filed his MPIA request on May 13, 2021—over three years after the occurrence of the alleged events in his Complaint and over two months after Defendant CBMC filed its notice of removal. (*See* Aff., ECF No. 31-1 at 2.) Such an unexcused delay in initiating this aspect of his investigation would appear to counsel in favor of denying Plaintiff's Motion to Amend. *See Achumba*, 2009 WL 4730506, at *3 (finding that plaintiffs who sought to name non-diverse defendants over three years after the incident giving rise to the lawsuit "had more than enough time to investigate their claim" and denying motion to amend).

Although—as Defendant CBMC correctly points out—the use of John Doe defendants is generally disfavored, particularly when "the plaintiff's ignorance of the defendant's true identity is the result of willful neglect or lack of reasonable inquiry," *Williams v. 21st Mortg. Corp.*, Civ. No. PX-16-1210, 2017 WL 1133706, at *4 (D. Md. Mar. 27, 2017) (internal citations and quotations omitted), Plaintiff's specific reference to the three John Doe security guards throughout his original Complaint in his description of the events giving rise to this case demonstrate that Plaintiff always intended to sue at least three of the individuals now named in the Proposed Amended Complaint. *Cf. Newman v. Motorola, Inc.*, 218 F. Supp. 2d 783, 785 (D. Md. 2002) (declining to join nondiverse defendant who was not mentioned in "the initial, first, and second

'amended complaints," "[n]or was any reference made to a 'John Doe'" that would demonstrate plaintiff's intent to sue the nondiverse defendant from the outset of the lawsuit, rather than only after removal); *Brundage*, 2017 WL 1207584, at *3 n.3 (suggesting use of a "Jane Doe" defendant as an alternative to Plaintiff's substantial delay in seeking to add as a defendant an employee of defendant-employer). Thus, although Plaintiff's delay weighs against him in the *Mayes* analysis, the Court finds that it is not dispositive.

### C. Balancing the Equities

In removal actions, federal courts must be certain of their jurisdictional foundation and all doubts will be resolved in favor of remanding the matter to state court. *See McCallister*, 2021 WL 5360438, at *6 (collecting cases). Defendant CBMC certainly has a legitimate interest in preserving access to a federal forum to resolve this dispute. *Achumba*, 2009 WL 4730506, at *3 (citing *McKinney v. Bd. Of Trs.*, 955 F.2d 924, 927 (4th Cir. 1992)); *see also Coley*, 138 F.R.D. at 465 ("[T]he diverse defendant has an interest in keeping the action in federal court."). However, this interest is outweighed in this case because Plaintiff states a colorable legal claim against the Proposed Defendants, inefficiencies and inconsistencies could result from parallel federal and state court litigation, and Plaintiff will be significantly injured if joinder is not permitted. The Court therefore grants Plaintiff leave to amend his Complaint to name the Prospective Defendants and remands the case to the Circuit Court for Baltimore City pursuant to 28 U.S.C. § 1447(e).

### IV. Conclusion

For the foregoing reasons, an order will issue denying Plaintiff's Rule 60(b) Motion (ECF No. 28) and granting Plaintiff's Motion to Amend (ECF No. 31) consistent with this Memorandum.

DATED this \_\_13\_\_ day of December, 2021.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
Chief Judge